## HEBERT v. N. O. PUBLIC SERVICE, INC.

———

(January 21, 1929. Opinion and Decree.)
(March 4, 1929. Rehearing Refused.)
(April 22, 1929. Writ of Certiorari and
Review Refused by Supreme Court.)

———

Clancy A. Latham, of New Orleans, attorney for plaintiff, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. Plaintiff brings this suit for damages resulting from physical injuries alleged to have been sustained by reason of a fall she suffered, due, it is claimed, to the premature starting of a street car operated by defendant company while she was in the act of alighting from the front step.

The defendant denies that the accident happened in the manner claimed by plaintiff and imputes her fall to plaintiff's carelessness, or weakness, in alighting from the car, which, it is insisted, remained stationary until after plaintiff had alighted and fallen.

There was judgment below for plaintiff in the sum of $4,800.00 and defendant has appealed.

The plaintiff's testimony is not impressive. She first states that the car gave a violent jerk at a time when she had one foot on the platform and one on the step, and, subsequently, that the jerk occurred at a time when one of her feet was on the step and the other about to touch the ground. Several witnesses to the occurrence testified in behalf of plaintiff, but none of them saw the car stop or the plaintiff fall. On the other hand, three witnesses testified that the car did not start prematurely after stopping for the purpose of permitting plaintiff to alight. Two of these witnesses, the conductor, and a power house employee of the defendant, who happened to be in the street car on his way to work, may be said to be witnesses whose testimony is to some extent affected by their employment; but the third, a sea captain by the name of Jones, who was a passenger in the car at the time, corroborates the testimony of defendant's employees. He says that, when the car reached the corner, plaintiff, who was carrying a large bundle, alighted, and that as she did so she appeared to turn her ankle and fall, dropping her package as

342

she fell. He is quite positive that the car stopped at the usual place and did not start again until after the conductor had assisted plaintiff to her feet and helped her in crossing the street.

The case was tried by a jury, and, as previously stated, resulted in a verdict of $4,800.00 in plaintiff's favor. It is evident that the jury adopted the plaintiff's version of the accident.

We are very reluctant to disturb the jury's finding and substitute therefor our own conclusions upon the facts as they appear in cold type in the record, without the opportunity of seeing and hearing the testimony from the living lips of the witnesses. We fully appreciate the advantage possessed by the jury in reaching their conclusions and are conscious of our own limitations in that regard. Nevertheless, under our peculiar (and to the mind of the writer, unfortunate) system of jury trials in civil cases, it is our duty to set aside a judgment based upon the verdict of a jury whenever it appears to us erroneous, and to substitute therefor such judgment as in our opinion should have been rendered, whether the case turn upon a question of fact or of law. Perhaps the system which prevails in our sister states is not more to be desired, but there, as we understand, the appellate court can only reverse and remand, and then only for errors of law. In such practice there is at least the merit of ultimate reliance upon the jury as a fact finding instrument in theory, whatever may be the practical effect. With us the jury's findings are of such brief authority as to afford little justification for the loss of time and inconvenience to our citizens which compulsory jury service entails.

The judgment appealed from is, for the reasons assigned, reversed, and it is now ordered that there be judgment in favor of defendant, dismissing plaintiff's demand at her cost.